Good morning may it please the court my name is William Lovett on behalf of the respondent Mr. Chen and with the court's permission I'd like to reserve three minutes to address the case. Mr. Lovett. Yes you may have it. Thank you. This case involves an appeal of a district court's order enforcing an IRS summons requiring the respondent to produce foreign bank account information required to be kept under the Bank Secrecy Act over the assertion of the respondent's Fifth Amendment right. The record establishes that the government has information concerning respondents foreign bank record activity that it seeks to summons. I'm sorry I thought your Fifth Amendment claim was restricted to a claim about the act of production doctrine and not the documents themselves were protected. That's made by a revenue agent in the case that the respondent's tax return doesn't reflect sufficient income to support his lifestyle. The IRS issued this summons to compel the respondent to engage in a testimonial act of producing the foreign bank records over the assertion is Fifth Amendment right because that act was testimonial and incriminating. Now in support of its position the government proposes an all-or-nothing mechanical application of the required records doctrine that the Supreme Court recognized in the Shapiro that eliminates any consideration of the Fifth Amendment right or the purpose of the government's inquiry. It also eliminates any consideration of more recent Supreme Court precedent regarding the act of production being testimonial and rendered by the district court and the seven circuits that have decided this case before this one have applied the government's mechanical application of the required records doctrine to reach that conclusion. I'm sorry what do you mean by mechanical application? All of those circuits have ruled as a matter of fact involved that the Fifth Amendment privilege gives way. Are you suggesting there's a fact-based middle ground? It's not up or down? Yes, Your Honor. Precisely what I'm proposing. Why and what are the facts here? Well the fact-based standard that I'm proposing comes from the Supreme Court's decisions in California B. Byers and the Booknight decision and at one end of the spectrum we have the Shapiro decision which which the government advocates is a standard where if government can regulate and require records to be kept the Fifth Amendment has no application. On the other end of the spectrum. In Shapiro was there any other way for the government to get the information other than through that production request? The record isn't clear in Shapiro on that point but but what is interesting about the Shapiro holding is the government didn't make direct use of the act of production against the defendant in that They simply used the content of the records to investigate. They identified a customer name and used that information provided by the customer to bring a criminal prosecution based on a year that was not covered by the document production. So it's different and it really dealt with the issue of whether the content of the records were privileged. It did not deal with whether the act of production was testimonial or incriminating. So in this case the government already has much of the information I assume because of other requirements of the foreign banks similar information which they're requiring your client to produce. Yes your honor and you know our position is the only reason the government is acting in the manner that it is is to compel the testimonial act of production. I'm sorry what do they have and what are they missing that the subpoena is addressed to? Well your honor it's not clear what they have but in their pleadings below they have stated they have the information. And you haven't seen what that is? No we the record below shows we requested it we actually did a Freedom of Information Act request the government invoked the law enforcement exception so we don't know exactly what the government has but it does concede. But if for example the government already had say from Deutsche Bank information that your clients had in account that they had the name the address of your client then how is the testimonial act of production invoked involved here? Because the testimonial act of production. It merely confirms other information. Well if the government has this the act of production would confirm the respondents custody control and possession over the foreign bank account and that is the purpose of getting him to produce the documents. And what Justice Harlan was concerned with in his public interest in obtaining the information with the individual's constitutional protections and he set forth some factors to consider. He looked at the government's non-criminal purpose in obtaining the information. He looked at the nature of the self-reporting and he looked at the individual's Fifth Amendment right. Was the compelled production testimonial and the hit and run statute that the compelled nature of requiring somebody to identify themselves after they've been involved in a car accident was not sufficiently testimonial because it did not relieve the government of its main evidentiary burden in the criminal case. And in this case the government is seeking to compel the respondent to admit that he has a bank account where it's located the account number and the high dollar balance. Certainly I think the government would concede they couldn't drag them in and ask them to provide answers to those questions and they're effectively doing the same thing here. They couldn't drag the hit-and-run driver into the court and say and compel him to say yeah I hit the victim and ran. So I don't see where the Justice Harlan's rationale and what we have here. Well the compulsion in Byers was simply required the defendant to stop and identify himself. Make no omissions about the circumstances of the accident and the court analogized the identification as similar to a handwriting exemplar or a blood sample. It wasn't sufficiently testimonial that it was incriminating. Well but simply to testify yes I had this bank account. I know the bank account number is such and such. The income from the bank account was so many dollars. That information can either be neutral or incriminating depending on the circumstances and I don't see where you draw the line between that and the hit-and-run information which he had to give to the police at the accident. Well admittedly the information could be incriminating or neutral and only when the information is incriminating and there's a realistic fear of incrimination as the Fifth Amendment applies. We never reached that point in this case because the court, I'm sorry. Well I have to assume that your client came to the government's knowledge because the foreign bank gave the government four kinds of information about accounts and so it clearly your client had an account or at least it appeared that your client had an account. The government already has that. So isn't your argument that because they have his tax return they have what the government is trying to do here is to close the circle? Yes your honor and by closing the circle by compelling them to make the testimonial communication it's relieving itself of the burden of proving a criminal case. By the production of this information it establishes that he had possession custody and control over bank account and is subject to the reporting requirements under the Bank Secrecy Act and from that the government will undoubtedly infer he acted willfully and that's what the Fifth Amendment precludes. You know the other circuit courts have done the all-or-nothing routine which would preclude your argument and they've done it using the usual Supreme Court test. I had thought you were going to argue that the reason the required records doctrine doesn't apply here is that Congress had a criminal purpose to you don't quite seem to be making that argument and it's true Congress did have a criminal purpose but it also had a purpose of getting people to pay their taxes not cheat on their taxes, had a purpose of anti-terrorism investigations, had a purpose of just knowing data for regulatory purposes. So you'll agree that the purposes here go far beyond merely criminal law enforcement. I will agree there are aspects of the Bank Secrecy Act that are non-criminal. Go ahead. I'm sorry but the inquiry under the standard in Byers and Booknight is looking not at the statute but at the government's nature of the inquiry. Is the inquiry a non-criminal inquiry or is it to compel the testimonial act of production which is precluded? But at this point you don't know what the government's going to do with the information. All you know is you have an IRS subpoena. You do not have a criminal complaint. Fair point, Your Honor. We do not know what the government is going to do with the information. All right. Thank you. Good morning. May it please the Court. My name is Alex Robbins appearing on behalf of the United States. Just to correct the record on one item at the outset that my colleague mentioned. When asked about what information the government already has in its possession or what information the record establishes that the government already has in its possession. On page 14 of the joint appendix is the paragraph from the IRS revenue agent about what the IRS had at the time the summons was issued. The IRS agent states it has some incomplete bank documents including account statements. The IRS however is not in possession of all of the complete bank statements, deposit slips and other information sought in the summons. It doesn't specify there whether we're dealing with the domestic records or the foreign records and there's nothing in the affidavit about what the purpose of the IRS's inquiry is other than the statement as is required under Powell that there is no criminal referral in effect. That is that the taxpayer is not under criminal investigation and that the summons is issued for a valid civil purpose under the Internal Revenue Code. You know when I go back and I look at the original Senate report when this all began in the 70s, Senator Proxmire's very first statement is the purpose of the bill is to provide law enforcement authorities with greater evidence of financial transactions in order to reduce the incidence of white collar crime. I assume, and correct me if I'm wrong, that you get under the other statute, you get from the foreign bank the list of their American citizens who have accounts in their bank and there's quite a bit of information they're supposed to give you. And I assume that that triggers an investigation of taxpayers who you may already be looking at for other reasons and you have their tax returns. Isn't that the quintessential criminal investigation? Two responses. No, if I could address the second part first. It's not quintessential criminal investigation if the purpose of the inquiry is to get money that the government is owed. That's a quintessentially civil function. But the first part of your question is also the premise is incorrect. The government cannot simply go to a foreign bank and get account records. And certainly not through the Bank Secrecy Act. Now, certainly in recent years, you have FATCA, you have an increasing number of tax treaties where under some circumstances with some countries it's possible to get some information not directly from a foreign bank but through the foreign government. But the Bank Secrecy Act had a different purpose. The function of the Bank Secrecy Act was to do what Congress could to allow the government, if not the same information that it has in a domestic context where it really can go to the bank and get information, at least to require those parties that the government can regulate, that is U.S. persons, to keep some basic account records because that's the best that they could do. In other words, the reason the Bank Secrecy Act has or requires people with foreign accounts to keep their foreign account records is certainly in 1970 that's essentially the only place the government can get that information. And even today, say under a tax treaty, it's extremely difficult in many circumstances to get information from a foreign government indirectly from a foreign bank to a foreign government. So the purpose of the Bank Secrecy Act is to say that domestically these are the record-keeping requirements that banks are supposed to keep, that depositors are supposed to keep. And for foreign accounts where we don't have subpoena power, if you have a foreign account, a condition of having that account is to keep your basic account records going back five years because the only party that can be regulated there is the U.S. person, the U.S. resident. So it's not true we can simply go to a foreign bank. That's the reason you have this in the first place. As for the purpose of the record-keeping requirement, the best purpose is the one laid out in statute in 5311 of Penal 31, which says that the purpose of these record-keeping and reporting requirements are to obtain records that have a high degree of usefulness in criminal, tax, and regulatory investigations. As I understand it, though, you were making a broader argument in your brief. If I remember it correctly, you said whatever the government can forbid, the government can regulate. And whatever the government regulates by requiring records to be kept generates admissible records. Now, if I understand your argument, if the government took the position that for any particular act, it was going to criminalize it, and it did not, let's say, have a civil aspect of wanting to raise money to fund the government, as in this case. If the government took the position that it would simply criminalize an act and require records to be kept, which would indicate either performance or non-performance of that criminal act, that the records would therefore be admissible over a Fifth Amendment objection. Number one, do I understand that argument correctly? And number two, if I do, do you want to stand on that argument this morning as distinct from the answer you just gave to Judge Stahl? I think I'll skip Justice Souter's question, too, because I disagree with question one. If I understand your question correctly, as to your first point, that is not arguing. I think Your Honor gave a succinct description of Shapiro and the first prong of the inquiry. It's the second prong of inquiry, the Marchetti-Grosso-Haines limitation that forecloses that argument. So just to take a step back, what happened after Shapiro was the Supreme Court held, as it did in Shapiro, at page 32, that if we're dealing with an activity that the government can constitutionally regulate or forbid, it can require the keeping of records as a condition of that. And one cannot assert the Fifth Amendment as a defense to refuse to produce the records that are a condition of your engaging in that underlying regulated activity. In subsequent cases, particularly in Carragher and Lewis, which we cite in our brief, the federal government took that logic from Shapiro and wrote statutes that did what you just described, Justice Souter, that took criminal activity, like wagering or selling marijuana, and said, well, we could forbid this. And the government has the authority to forbid this. So under the logic of Shapiro, we want people who are gamblers or who are dealing illegal firearms or who are selling marijuana to file reports with the government, which, by the way, will make available to the state prosecuting authorities. And the court in Marchetti and Grosso and Haynes, issued on the same day, said, no, you can't do that. So what you really have is you have the first step under Shapiro is, are we dealing with something you don't have a right to do? Are you dealing with something where the government can constitutionally impose a record-keeping condition? The second step is, under Marchetti, Grosso, and Haynes, you can't take activity that actually is criminal and say, we're slapping a record-keeping condition on this, and now you criminals have to self-report. And I think that seems to be the gist of my colleague's argument is on the second prong. He's saying that, really, having an offshore bank account fails the Marchetti-Grosso-Haynes test. You're dealing with some – it's not essentially regulatory. It's inherently suspected criminal activities. And your answer to that is, not only implicates criminal activity, it just as well implicates civil activity. Absolutely. Well, it implicates – the focus is on the underlying activity, not the particular governmental inquiry before the court. Otherwise, none of these cases would be resolved the way they are because most of these cases are coming up in a criminal context. Shapiro came up in a criminal context. He was being prosecuted. So the inquiry is the underlying activity. The underlying activity here that triggers the record-keeping and reporting requirement is having an offshore bank account. We are not suggesting, nor could we suggest, that having an offshore bank account is inherently suspect of criminal activity or is almost necessarily criminal. And I think a good example of that distinction is the Supreme Court's decision in Haynes dealing with firearms and this Court's decision within the year, I think, in Veritimos dealing with firearms. In Haynes, the government lost because the statutory scheme there was set up – it was complicated, but it was set up to target only illegally obtained firearms. And the Court actually says, yes, it's theoretically possible that someone, some innocent person could have gotten an illegally obtained firearm without committing a crime and then would have to report himself. But that possibility is so remote that they can say that statute is almost exclusively directed at people engaging in criminal activity. By contrast, Veritimos – in Veritimos, this Court dealt with a reporting scheme that applied to firearms generally and said that the required records doctrine does apply there. Haynes does not apply because it's possible to comply with this record-keeping scheme and not be a criminal. Other circuits have held similarly, in Resnick, for example. And so the question is, are we dealing with a regulated activity that is almost always criminal? In other words, is it a real regulated activity or is it a fake one that the government said, you know, we're going to call selling marijuana or gambling a regulated activity and then make criminal self-report? That's clearly not what's happening here. Yeah, that's an interesting argument. But the government has gone to great lengths in recent years to get the disclosure of these accounts from the foreign institutions because of the, I think, overwhelming thought that many of these or a good portion of these aren't in the nature of criminal, a way to hide income. And so you look at it and you say to yourself, where do we properly draw the line on this? You're saying that as long as there can be some civil purpose, that's enough. I think, Your Honor, the question is, you look at the underlying activity that's triggering the reporting or record-keeping requirement and you ask, is that criminal or almost always criminal? The purpose inquiry is, I think, the wrong inquiry because it's not a question of subjective congressional purpose. The question is, who's covered by the reporting or record-keeping scheme? But just to take examples from other regulatory schemes where the doctrine has been applied, the securities industry, for example, I don't think anyone would argue that there's not a criminal enforcement element to required securities disclosures. But when the SEC, Office of Compliance and Inspections and Examinations, comes to knock on a broker dealer's door to look at their records, the broker dealer can't say, oh, Fifth Amendment, we're not going to let you in. One of the conditions of being a securities broker dealer is you let the SEC come and inspect your records. The fact that the U.S. Attorney's Office for the Southern District of New York also brings securities criminal prosecutions doesn't make that not a legitimate civil regulatory scheme. The same could be said with the other examples we listed in our brief with the regulation of pharmaceuticals, the regulation of air cargo, as this Court noted in Dicta-Nickens, the regulation of sexually oriented businesses, of interstate trucking. There are all kinds of regulated activities where the disclosure requirements have a civil purpose. I think buyers also, I'm, I guess, glad that my colleague spent so much time talking about buyers and his reply because I think buyers is a very instructive and useful case for government, for the government's position. Buyers does not say that the ID hit and run stop and identify yourself requirement was not sufficiently testimonial. My colleague is mistaken about that. That's what the plurality in buyers held. What Justice Harlan's controlling opinion holds is that stopping and identifying yourself is testimonial because you're engaging, you're admitting that you were engaged in the underlying accident. You were driving the car and you got in an accident. You're admitting that by stopping and identifying yourself. And nonetheless, because one cannot without distorting the normal connotations of language, as Justice Harlan said, characterize being involved in an accident as inherently suspect. The Fifth Amendment does not allow you to keep on driving and refuse to stop and identify yourself. So buyers is a very good example of where there is very clearly a law enforcement component to the regulatory scheme. But the required records still, doctrine still applies. The Fifth Amendment still does not allow you to say I'm not going to comply with this condition of having a driver's license. So the only limitation really is, in your view, a scheme to get at an obvious illegal activity up front. On the second prompt, yes, Your Honor. And I think that the doctrine, we agree with Mr. Chen that the doctrine is narrow and limited. That's what he said below. We agree with that. The Supreme Court has set out the limits of the doctrine in Shapiro as the first step. And that's, I think, an important step, too. I don't want to overlook that the Shapiro step of regulator forbid, could you forbid the underlying activity, is an important one. It's why the doctrine doesn't apply to tax records as we state in our brief and as the Seventh Circuit has held. And as this Court noted in Shlimsky, that's an open question. We're arguing now that the doctrine does not apply to tax records because being a taxpayer is not, in any meaningful sense, voluntarily undertaking a regulated activity. The government can tax all kinds of things it can't forbid, as the Supreme Court recently reminded us. So that's the first step, and it's a real prong, it's a real limit. And the second step also is a real limit. So these are the two prongs of the doctrine based on the Supreme Court's case law, and they lead to the very sensible conclusion that the government is entitled to have an administrative scheme,  the issue doesn't come up only in the case of offshore bank accounts, it comes up in a myriad of cases throughout the economy, such as the ones I mentioned earlier. You know, there's nothing much in the brief about the domestic records. The judge doesn't say very much. He looks at these things in camera. He looked at them in camera and then just issues a one-sentence order, not discussing why it says these are discoverable as well. And I took a brief look at all what was there, and looking at it, I can't tell anything about what these documents meant or didn't mean. Do you have any comment on that? Your Honor, my time's up. May I answer? Yes. No, we don't, other than to say that the standard is abuse of discretion, because we haven't seen the arguments for the record. We don't know what's in the sealed record. We don't know what the judge said in the sealed record. We don't know what arguments the appellant is making in the sealed record. Should we just send it back to him and say you have to explain? We don't know whether he has explained. You're telling me that the district judge has not explained any more than it should be open record. Assume that there is nothing other than the denial. I don't know that explanation is required as a matter of law. It depends on what records were produced. If the records were on their face, not incriminating, then especially given the deferential standard review, then the answer would be to affirm. If this Court feels, applying the abuse of discretion review, that it can't uphold the district judge's determination as to the domestic records, then, yes, you have to vacate and send it back. The United States is unable to take a position on that because we haven't seen the records. Because you don't know. Yes, Your Honor. Thank you. If the Court has no further questions, we ask that you affirm the judgment below. Well, don't leave the courtroom until we indicate we have no questions for you. Yes, Your Honor. I'll be right here. Thank you. The issue with the government's argument, and it has no limiting principle, there are hundreds of thousands of federal regulations that require the keeping of all sorts of records. And a number of them come with criminal enforcement provisions. And if the government can simply require somebody to produce the records that can be produced and either prosecute them based on the production of the records or prosecuting them, on the other hand, for not keeping the records, then the Fifth Amendment is meaningless. There are a number of ways the government could achieve the same goal of obtaining these records without implicating the Fifth Amendment. You may recall the Doe case. I've said it in our brief. In that case, the government had the taxpayer consign a consent order, which was not on its face incriminating, authorizing the government to receive foreign bank records directly from the foreign bank. That type of consent order does not implicate the Fifth Amendment. In the Braswell case... I'm sorry. Has your client offered to do that? We have not offered to do it, but on the other hand, the government hasn't asked. But it seems to me that that would be a fair resolution, consistent with the Fifth Amendment and the Supreme Court jurisprudence on this issue. Another alternative is what the Supreme Court did in Braswell. It required the corporate custodian to produce the records, but made clear that the act of production could not be used against the entity. You did not ask for that relief in the district court. It's either late or perhaps it's premature. But why should we take that up? Well, we certainly haven't waived the Fifth Amendment argument. And to be fair, in the sealed appendix, with respect to the domestic records, we did raise the issue. Because with respect to the domestic records, some of those records were corporate records, and we asked the court to either impose the use restriction consistent with Braswell or issue summons to the corporation, which doesn't have a Fifth Amendment. The limiting principle here is set forth in the analysis in Byers and Booknight. And it's not whether the government can proffer some regulatory, non-criminal purpose for requiring the records to be kept. The inquiry is looking at the nature of the government's compelled production. Is it for reasons in the Booknight case? Was it for reasons unrelated to law enforcement? In that case, it was. It was a concern for safety of a child. Thank you. Thank you.